WHITCOMB v. INDIANAPOLIS TRACTION AND TERMINAL COMPANY.

[No. 9,275. Filed June 6, 1917.]

1. LANDLORD AND TENANT.—Failure to Pay Rent.—Remedies.— Any remedy provided in a lease for default in payment of rent did not deprive the lessor of any statutory remedy applicable under the terms of the lease in the absence of an express restriction therein. p. 611.

2. LANDLORD AND TENANT.—Action for Possession.—Time for Bringing. — Though a landlord's action for possession was brought only nine days before the expiration of the old lease and the commencement of a renewal thereof, the fact that the possession recovered might be brief could not affect the right to maintain the action. p. 611.

3. LANDLORD AND TENANT. — Lease. — Renewal.—Forfeiture. — Where a covenant to renew a lease is independent of other covenants therein and is conditioned only on notice of renewal, a breach of a covenant to pay rent will not affect the right to renewal. p. 612.

4. LANDLORD AND TENANT.—Lease.—Right to Renewal.—Covenant to Pay Rent.—Construction.—Where a covenant giving the tenant a right to renew a lease was independent of other covenants, the delivery by the tenant of the stipulated notice, which was the sole condition for renewal, was sufficient to create a new tenancy, regardless of the tenant's breach of the covenant for the payment of rent. p. 613.

5. LANDLORD AND TENANT. — Action to Recover Possession. — Judgment.—Covenant for Renewal of Lease.—Where a covenant giving the right to renew a lease, which had been accepted by the tenant, was independent of any condition as to payment of rent for the original term, and tenancy under the new lease had commenced, the court could not render a judgment allowing recovery of possession for default in the payment of rent under the old lease. p. 613.

6. LANDLORD AND TENANT.—Renewal of Lease.—Notice of Election.—Requisites and Sufficiency.—Where a covenant in a lease provided for a renewal thereof for a new term, upon the lessee

giving notice of his intention so to do, and stipulated that the parties appoint arbitrators to determine the rental for the new term if the lessor was unwilling to renew at the rental specified in the covenant, the fact that the tenant in the notice of his election to renew failed to designate an arbitrator did not render the notice ineffective, as the lease did not provide that the arbitrators be appointed at the time of the giving of such notice.    p. 615.

7. LANDLORD AND TENANT.—*Forfeitures.*—Forfeitures are not favored in law, and, as a general rule, a forfeiture will be enforced only upon the clearest evidence that such was the intention of the parties.    p. 616.

8. LANDLORD AND TENANT.—*Action for Possession.*—*Breach of Covenant to Pay Rent.*—*Acceptance of Rent.*—*Waiver of Forfeiture.*—In a landlord's action against a tenant to recover possession for failure to pay rent in advance as covenanted in the lease, where the evidence shows that practically all instalments of rent were paid after maturity and received without complaint or objection by the lessor, who assured the lessee that no forfeiture would be claimed, and the tenant relied upon such assurances, the landlord is estopped to claim a forfeiture for failure of the tenant to pay the last instalment of rent at the time specified in the lease.    pp. 616, 619.

9. ESTOPPEL.—*Equitable.*—*Grounds.*—Where one party has by his representations or conduct induced the other party to a transaction to give him an advantage which it would be against equity for him to assert, he will not be permitted to avail himself of that advantage.    p. 618.

10. LANDLORD AND TENANT.—*Action for Possession.*—*Waiver of Forfeiture.*—*Inconsistency of Evidence.*—In a landlord's action against a tenant to recover possession for failure to pay rent in advance as covenanted in the lease, lessee's testimony that he did not pay his rent promptly because he was "hard up" and did not have the money was not inconsistent with the claim that he had relied on the lessor's representations that a forfeiture would not be claimed for failure to pay rent at maturity.    p. 622.

11. CORPORATIONS.—*President's Authority to Bind Corporation.*—*Presumption.*—Where a president of a corporation had general management of its business, it will be presumed, in the absence of evidence to the contrary, that he had authority to bind the corporation by statements in reference to a lease executed by him, and such statements were binding until withdrawn.    p. 623.

12. CORPORATIONS.—*President's Authority.*—*Admission.*—Where a corporation, in an action to recover possession, sought to

assert rights created by a lease executed by its president and introduced the lease in evidence, it, in effect, admitted his authority to execute the lease. p. 623.

From Marion Circuit Court (24,449); *Louis B. Ewbank,* Judge.

Action by the Indianapolis Traction and Terminal Company against James A. Whitcomb. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Lew Wallace, John T. Jameson* and *Walter B. Grant,* for appellant.

*D. E. Watson* and *W. H. Latta,* for appellee.

BATMAN, J.—This action was begun on August 24, 1914, before a justice of the peace of Marion county, Indiana. It is a statutory proceeding, brought by appellee against appellant, to recover the possession of certain premises on account of the failure of appellant to pay an instalment of rent therefor amounting to $466.67, due on August 1, 1914. After the filing of the complaint and before judgment, appellant tendered and paid into the court the sum of $569.67 in payment of such rent, damages and costs. A trial was had before such justice of the peace, and a judgment rendered in favor of appellee on August 31, 1914. Appellant appealed to the circuit court of Marion county, where he filed three paragraphs of answer, the first of which was a general denial, and the other two set up facts on which he based waiver and estoppel. Appellee filed a reply in general denial to said affirmative paragraphs of answer. Trial was had, and on March 10, 1915, judgment was rendered in favor of appellee, from which appellant prosecutes this appeal. The only error assigned calls into question the action of the court in overruling the motion for a new trial. In its motion appellant alleges that the decision of the court is not sustained by sufficient evidence and is contrary to law,

608    APPELLATE COURT OF INDIANA,

Whitcomb v. Indianapolis Traction, etc., Co.—64 Ind. App. 605.

and that the court erred in admitting and refusing to admit certain evidence.

An examination of the record discloses that the uncontradicted evidence establishes among other things the following facts:   On September 30, 1904, appellee executed a lease to appellant for certain premises in Indianapolis, Indiana, for a period of ten years, commencing on September 1, 1904, and ending on August 31, 1914, at a rental of $5,000 for each of the first two years, $5,500 for each year for the next three years, and $5,600 for each year for the next five years, payable in advance in equal monthly instalments on the first day of each and every month during said term at the office of appellee in Indianapolis, Indiana, or at such other place in said city as it should from time to time by written notice left at the premises, appoint. The lease was made subject to certain terms and conditions, among which are the following:

"Seventh:   Said lessee, for his heirs, executors, administrators, successors and assigns hereby covenants and agrees with said Lessor, its successors and assigns, that he will pay said rents in manner aforesaid:   That he will observe and perform each and every condition and provision of this lease upon him imposed; that if default be made in payment of said rent, or any part thereof, for ten days after it shall become due, and without demand made therefor, or if said lessee, without lessor's consent, shall assign this lease or underlet said premises, or any part thereof, or shall use said premises for any other than the purpose aforesaid, or shall fail to observe and perform any of the other conditions, agreements rules or provisions of this lease, it shall be lawful thereupon for said lessor to re-enter and re-possess said premises, and to remove all persons and property therefrom, in the same manner and with the same rights as if this lease had not been made, and for the purpose of such re-entry, said lessee hereby waives any notice prescribed by law, in writing or otherwise to vacate said premises.

MAY TERM, 1917. 609

Whitcomb *v.* Indianapolis Traction, etc., Co.—64 Ind. App. 605.

"And to secure the payment of rent accruing hereunder, said Lessor is hereby given a valid and first lien upon all property which, at any time, may be in or upon said leased premises."

"Eleventh: The lessee, provided he gives notice of his election so to do, in writing to the lessor three months before the expiration of the first ten-year term, shall have the right to a renewal of this lease for another period of ten (10) years upon the following terms, viz.: for the first five (5) years of said second term the rent to be at the rate of Six Thousand Dollars ($6000.00) per year, and for the second half of the second term of ten (10) years, the rent shall be at the rate of Seven Thousand Dollars ($7000.00) per year, but, if at the expiration of the first ten-year period, the lessor is unwilling to confirm to the lessee the second term of ten years at the annual rentals as above set forth, as it shall have the right to do, then and in lieu thereof, the following form of arbitration is hereby agreed upon, to-wit: each party hereto shall nominate a citizen of Indianapolis of good repute and they together shall agree upon and select a third, and the three persons so selected shall form an arbitration committee who shall determine how much rent the lessee shall pay each year of said second term of ten years."

Appellant entered into possession of such premises, by virtue of said lease, soon after the execution thereof, and has retained such possession continuously since said date. Prior to the commencement of this action appellant had paid all of the monthly instalments of rent for said premises as provided in said lease except the instalment of $466.67 falling due on August 1, 1914, and that such instalment, with $100 damages and $3.00 costs, was paid into court for the use of appellee after the commencement of this action and prior to the rendition of the judgment before the justice of the peace.

On May 25, 1914, appellant served the following notice on appellee:

610    APPELLATE COURT OF INDIANA,

Whitcomb v. Indianapolis Traction, etc., Co.—64 Ind. App. 605.

"To Indianapolis Traction and Terminal Company:

"Whereas, the lease from your company to me dated the 30th day of September, 1904, demising to me premises Nos. 116 and 118 on the street floor of your building known as the Traction Terminal Building on the northwest corner of Illinois and Market Streets in said City of Indianapolis, Indiana, containing the following provision and agreement: (Here follows a verbatim copy of item eleven of said lease as set out *supra.*)

"You are hereby notified that pursuant to the above quoted paragraph of said lease I have elected and do hereby elect to renew said lease for another period of ten years commencing on the 1st of September, 1914, and ending on the 31st day of August, 1924, the rental to be at the rate of six thousand dollars ($6000.00) per year for the first five years of said second or additional term and at the rate of seven thousand dollars ($7000.00) per year for the second half of the second or additional term of ten years, as provided in said paragraph of said lease; or if your company is unwilling to confirm to me the said second term of ten years at said annual rental, then and in such event the rent for said additional term shall be fixed by arbitration, all as provided in the paragraph aforesaid and in conformity with said lease as it now subsists between us. And pursuant to such election I shall continue to hold, occupy and use said premises in conformity with said lease as renewed for said additional or second term of ten years, and as your tenant at the rental aforesaid, or the rental to be fixed by arbitration as provided in the paragraph aforesaid.                    (Signed)

Dated May 18, 1914.          James Whitcomb."

Appellant tendered to appellee on the first days of September and October, 1914, the rent for such current months, and appellee then notified appellant that he should lose no rights by failure to make further tenders for succeeding months.

Appellant first contends that appellee, by its complaint in this action, is seeking to avail itself of a remedy provided by statute where rent is payable in ad-

vance and there is a failure to pay the same on the day it is due; that appellee has waived such remedy by a provision in the lease expressly allowing him ten days in which to pay his rent after due, and providing for re-entry upon the continuance of such default, and therefore his complaint is not sustained by proof of any right to the remedy expressly provided by the lease itself.

We do not consider this contention well taken. The lease expressly provides in item seven that the lessee shall pay the rent in the manner aforesaid. The

1. manner aforesaid is "in advance in equal monthly instalments on the first day of each and every month during said term." This gave appellee a right to such statutory remedy in the event of default in the payment of the rent in advance as stipulated in the lease. Any other remedy provided therein did not deprive appellee of any rights given by law, unless the terms thereof expressly restricted the parties to such specified remedy. *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N. E. 877. The lease in question contains no such restriction, and hence appellee was within its rights in pursuing its statutory remedy.

Appellant further contends that, inasmuch as this action was brought only nine days before the expiration of the original ten-year term of the lease,

2. so that judgment could not be rendered more than four days before the expiration of such original term, it is manifest that the real relief sought was not to terminate the existing term, but to annul the contract for a new lease for the additional term, and for that reason the justice of the peace before whom this action was begun had no jurisdiction; that, such justice of the peace being without jurisdiction, the circuit court did not acquire jurisdiction on appeal, and the judgment rendered by it was therefore wholly unauthorized.

An examination of the record does not disclose any facts which would justify this court in reaching such a conclusion. Appellee was clearly within its rights in bringing this action before the justice of the peace at the time it did, under its theory of the complaint and the facts for which it contends. The fact that the possession recovered thereby might have been of brief duration, as contended by appellant, could not affect its right to maintain such action.

Appellant also contends that the covenant for a renewal of the original lease for another period of ten years is not conditioned on the payment of the rent for the original term, or the performance of any provision of such lease, save the one requiring notice of his election to avail himself of the privilege of such renewal; that the service of such notice within the time had the effect of creating a new lease for such additional term, and his rights for such new term thereby became vested, regardless of his performance of any other condition of the original lease; that inasmuch as he had entered upon such new term, long prior to the rendition of the judgment from which this appeal is taken, and had tendered his rent for the first two months of such new term on the days it was due, and appellee had waived tender thereof for the succeeding months, that judgment in favor of appellee for possession was wholly unauthorized.

On this contention the authorities hold that where a covenant to renew is independent of the other covenants in the lease, as that for the payment of rent, the

3. breach of the latter will not affect the right to insist upon the former. It is otherwise, however, where the right to a renewal is made to depend upon the performance by the lessee of his undertaking to pay rent. 24 Cyc 1002; 2 Underhill, Landlord and Tenant §812; 1 Taylor, Landlord and Tenant (8th ed.)

§337; 1 McAdam, Landlord and Tenant (4th ed.) §145; *Tracy* v. *Albany Exchange Co.* (1852), 7 N. Y. 472, 57 Am. Dec. 538; *Fergen* v. *Lyons* (1916), 162 Wis. 131, 155 N. W. 935. In the case last cited, the court said, on page 137: "The further contention is made that the failure to pay the rent under the original lease, when due, worked a defeasance of the renewal covenant. That does not seem so. The covenant to renew was not made conditional upon anything except the decision of respondent to take a new term, and the farm not being sold at the end of the first year." In the case of *Tracy* v. *Albany Exchange Co., supra,* the court said, on page 475: "As to the objection made by the defendant that there was rent in arrear, and therefore the plaintiff was not entitled to a further lease, the covenant being independent, the liability of the defendant for the breach of the covenant in question remained. The payment of the rent was not a condition precedent to the right of the plaintiff to a renewal of the lease under the covenant, and he might bring his action for a breach of it, although he was guilty of a default in the payment of his rent or performance of his covenant." In the instant case the right of renewal given appellant by the terms of the original lease is independent of the other covenants thereof. Its sole condition was the giving of the stipulated notice.

The trial of this cause in the court below was not had until January 25, 1915. As it was an appeal from the judgment of a justice of the peace, such trial was had under the rules and regulations prescribed for trials in the court from which such appeal was taken. §1793 Burns 1914, §1502 R. S. 1881. All matters of defense, except the statute of limitations, set-off, and matter in abatement, were therefore admissible in evidence without plea. §1749 Burns 1914,

§1460 R. S. 1881.   The court was therefore authorized
to hear evidence of matters which occurred after the
filing of the complaint affecting the issues tendered
thereby, without a supplemental pleading.   The rec-
ord discloses that undisputed evidence was heard with-
out objections to the effect that appellant did not yield
possession of the premises in question at the expira-
tion of the first ten-year term under the original lease,
but continued in possession until the time of such trial,
under a claim of right by virtue of a renewal thereof
for an additional period of ten years, in strict compli-
ance with its terms; that appellant had tendered to
appellee, on the first days of September and October,
1914, the rent for such current months in accordance
with the requirements of the lease for the new term,
but such rent was refused by appellee, and tender of
such rent for the succeeding months was expressly
waived by it.   Under the authorities cited and the facts
stated, we are of the opinion that the service of the
notice by appellant on appellee, of his election to renew
the lease for an additional period of ten years in ac-
cordance with its terms, had the effect of creating a
new tenancy between appellant and appellee begin-
ning September 1, 1914, regardless of the payment of
the rent for the month of August, 1914, under the orig-
inal lease, since such covenant to renew was independ-
ent of any condition as to payment of rent for
such original term.   At the time of such trial and
the rendition of the judgment in the court below,
appellant was in possession of such premises under
such renewal without any default as to payments of
rent thereunder, and hence the court had no authority
to render a judgment depriving him of the possession of
the premises in question at such time, because of a fail-
ure to pay the last month's rent of the original term.

Appellee, however, suggests that inasmuch as appel-

lant, in his notice of election to renew the lease for an additional term of ten years, failed to appoint 6. his arbitrator to fix the amount of rent to be paid thereunder, it was rendered ineffective. We do not consider this suggestion tenable. The lease does not provide that such arbitrator shall be appointed at the time of the giving of such notice. In fact, the right to have the amount of such rent arbitrated is wholly optional with appellee, and is made dependent on its unwillingness to accept the amounts stipulated therein for such new term. Appellant was not required to anticipate that appellee would be unwilling to accept such stipulated amounts, and name an arbitrator in advance of notice that an arbitration was desired or demanded, but having given notice of his election to renew such lease, and his willingness to pay such stipulated rent or submit the matter to arbitration in accordance with the provision for such renewal, he was fully justified in assuming that appellee was content to receive such stipulated rent.

Appellant further contends that the only theory on which the decision of the court below can be sustained is based on a right in appellee to forfeit his lease for the premises in question, and that, inasmuch as the uncontradicted evidence shows that appellee was estopped to assert such right at the time and in the manner attempted, there was no evidence to sustain such decision. Appellant bases such estoppel on a claim that the undisputed evidence shows that appellee, by its representations and conduct, had led him to honestly believe that it would not forfeit his lease and thereby terminate his tenancy, on account of a failure to pay the rent as provided therein, but would be satisfied to have it paid at any time within the current month, or within a reasonable time thereafter; and that by reason of such belief, and the reliance he placed in the represen-

tations and conduct of appellee, he did not pay the rent for the month of August, 1914, on the first day of such month as provided in such lease. Upon this question appellant has in his favor the fact that forfeitures are not favored in law. Indeed, as a general rule, results flowing therefrom are regarded as so odious that a forfeiture will be enforced only where there is the clearest evidence that such was the intention of the parties, and to avoid such odious results the courts are not slow in seizing hold of such circumstances as may have been acted on in good faith and which indicate an agreement or an election on the part of the other party to waive strict compliance with the conditions and stipulations in the contract. *Farmers, etc., Ins. Co.* v. *Jackman* (1904), 35 Ind. App. 1, 73 N. E. 730; *Majestic Life, etc., Co.* v. *Tuttle* (1914), 58 Ind. App. 98, 107 N. E. 22; *Sweetser* v. *Odd Fellows, etc.* (1889), 117 Ind. 97, 19 N. E. 722; *Michigan, etc., Ins. Co.* v. *Custer* (1891), 128 Ind. 25, 27 N. E. 124; *West* v. *Nat. Casualty Co.* (1915), 61 Ind. App. 479, 112 N. E. 115. But courts cannot avoid enforcing forfeitures when the party by whose fault they are incurred cannot show some good ground in the conduct of the other party, on which to base a reasonable excuse for the default. *Grand Lodge, etc.* v. *Marshall* (1903), 31 Ind. App. 534, 68 N. E. 605, 99 Am. St. 273; *Union, etc., Ins. Co.* v. *Adler* (1906), 38 Ind. App. 530, 73 N. E. 835, 75 N. E. 1088; *Public Savings Ins. Co.* v. *Coombes* (1915), 59 Ind. App. 523, 108 N. E. 244; *Thompson* v. *Insurance Co.* (1881), 104 U. S. 252, 26 Law Ed. 765.

We must therefore direct our attention to the uncontradicted evidence, with reference to the payment and acceptance of the rent under such lease, in order to determine if any facts were thereby established to sustain appellant's claim of estoppel. Such evidence shows, among other things, that of the

Whitcomb *v.* Indianapolis Traction, etc., Co.—64 Ind. App. 605.

120 monthly instalments of rent under such lease, which matured prior to the commencement of this action, two were paid at or before maturity; twenty were paid after maturity but before the tenth of the month; forty-eight were paid after the tenth, but on or prior to the twentieth of the month; fifty were paid after the twentieth of the month; and one was paid into court after the commencement of this action. Appellee sent notices to appellant on the first of each month that his rent for such month was due, and during the ten years in question sent him a number of telegrams and letters with reference to the payment of the same, but none, except one bearing date of July 10, 1905, contained any reference to a forfeiture of the lease, suit for possession, or other matter indicating an intention to enforce a compliance with the terms as to the payment of such rent. On July 10, 1905, appellant received a letter from appellee stating that, unless his rent for June and July was paid by return mail, it would be compelled to bring suit for possession. On receipt of this letter appellant called on the president of appellee, who had executed the lease on its behalf, and had a conversation with him with reference to the contents of such letter. In this conversation the president of appellee informed appellant, in substance, that he was running the business just the way he wanted it done; that it was good for his people and his customers; that he need not worry about being thrown out of his tenancy because he was a little late with his rent; that naturally he ought to try and pay his rent during the current month, but if he did not he should not lose his tenancy; that he knew appellant was good for the rent and his business was good for the building; and he knew appellant was going to stay there as long as he wanted to. After this conversation appellant relied on the promise made to him by the president

of appellee, and continued his custom of paying his rent after maturity, except the instalments falling due on September 1, 1910, and on January 1, 1911, one of which was paid at maturity and the other one day prior thereto.   Such delayed payments were always accepted without objection or complaint.   During such period he continued to receive notices of the maturity of such rent, and telegrams of inquiry with reference thereto, but he considered the same as matters of form.   Appellant believed, from the representations and conduct of appellee, that his lease would not be forfeited if he failed to pay his rent at maturity, and, relying on such belief so induced, did not so pay the same, for the reason, generally speaking, that he was "hard up" and did not have the money at such time.   No notice was given appellant that such custom of paying the rent should be discontinued, or that strict compliance with its terms as to such payments would be exacted.

It is well settled that where one party has by his representations or conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for 9. him to assert, he will not in a court of justice be permitted to avail himself of that advantage.   *West v. Nat. Casualty Co., supra; Supreme Tribe, etc. v. Hall* (1899), 24 Ind. App. 316, 56 N. E. 780, 79 Am. St. 262; *Rutherford v. Prudential Ins. Co.* (1904), 34 Ind. App. 531, 73 N. E. 202; *Sweetser v. Odd Fellows, etc., supra; Painter v. Industrial Life Assn.* (1892), 131 Ind. 68, 30 N. E. 876; *Workingmen's, etc., Assn. v. Leverton* (1912), 178 Ind. 151, 98 N. E. 871; *Morgan v. Northwestern Nat. Life Ins. Co.* (1906), 42 Wash. 10, 84 Pac. 412, 7 Ann. Cas. 382; *Moses v. Loomis* (1895), 156 Ill. 392, 40 N. E. 952, 47 Am. St. 194; *Insurance Co. v. Wolff* (1877), 95 U. S. 326, 24 L. Ed. 387; *Insurance Co. v. Eggleston* (1877), 96 U. S. 572, 24

MAY TERM, 1917.                              619

Whitcomb *v.* Indianapolis Traction, etc., Co.—64 Ind. App. 605.

L. Ed. 841. The rule stated is uniformly applied in insurance cases as appears from the authorities cited, but it is a rule of general application, based on good morals and sound reason, and its enforcement tends to uphold good faith and fair dealing. It is therefore applicable in cases arising between landlords and tenants. *Templer* v. *Muncie Lodge, etc.* (1911), 50 Ind. App. 324, 97 N. E. 546; *Standard Brewing Co.* v. *Anderson* (1908), 121 La. 935, 46 South. 926, 15 Ann. Cas. 251 and note; *Palmer, etc., Co.* v. *Barney Estate Co.* (1912), 149 App. Div. 136, 133 N. Y. Supp. 876; *Hukill* v. *Myers* (1892), 36 W. Va. 639, 15 S. E. 151; *Cogley* v. *Browne* (1882), 15 Phila. (Pa.) 162; *Thropp* v. *Field* (1875), 26 N. J. Eq. 82; *Montant* v. *Moore* (1909), 135 App. Div. 334, 120 N. Y. Supp. 556.

The cases above cited abundantly support the conclusion that, if appellee, by any express agreement with appellant, or by any agreement implied by its

8. acts and conduct, led appellant to honestly believe that it would accept from him the monthly instalments of rent provided for in his lease after the day fixed therein for the payment thereof, and would not forfeit his lease by reason of failure to comply with its terms as to the time of such payments, appellee will thereby be estopped from asserting a forfeiture on account of such delay in payment, provided, of course, that such delay was induced by such agreement, and the rent was paid or tendered in accord therewith. By reference to the undisputed facts stated *supra,* it is at once apparent that a custom had been firmly established and long followed to pay rent not only after maturity but most frequently in the last half of the current month; that such custom was uniformly followed in the payment of such rent, from the date of such lease to the commencement of this action, except on two occasions, and that such rent in every in

stance, when so paid, was accepted without objection
or complaint; that no notice was ever given appellant
of any intention on the part of appellee to require a
strict compliance with the terms of such lease for more
than nine years prior to the commencement of this ac-
tion; that after such notice appellee, through its presi-
dent who executed such lease on its behalf, expressly
assured appellant that his lease would not be forfeited
on account of a failure to comply with the terms thereof
in the payment of such rent; that by reason of such as-
surance, and appellee's conduct in apparent accord
therewith for many years, appellant was led into an
honest belief that his lease would not be forfeited by
reason of such delays in the payment of his rent, and
was thereby induced to follow such custom in that re-
gard; that all of the rent under such lease, which ma-
tured prior to August 1, 1914, was paid before the
commencement of this action, and accepted by appellee
without any reservation of the right of forfeiture.  It
is at once apparent that such express agreement, and
such conduct on the part of appellee, was of such a
character as to readily lull a person of ordinary busi-
ness prudence into a sense of security, with reference
to a lease so conditioned as to the payment of rent.
That it did, in fact, have such effect on appellant, and
that he was thereby led to pay his rent in the way and
manner shown, is not open to serious question under
the evidence.  The principle that no one shall be per-
mitted to deny that he intended the natural conse-
quences of his acts when he has induced others to rely
upon them is applicable here.  The provision for punc-
tuality in the payment of rent was evidently inserted in
the lease solely for the protection of appellee, and he
cannot be allowed to convert it into a means of oppress-
ing appellant, when it has misled him to neglect its
strict observance.  Under such circumstances appellee

is estopped to assert a right of forfeiture of such lease, because the rent for the current month of August, 1914, had not been paid on or prior to the 24th day thereof, being the day on which this action was commenced.

We do not mean to hold that the lease in question was modified by any such representations or conduct on the part of appellee. The right of forfeiture still remained to be asserted and enforced under appropriate conditions, but under the facts shown by the evidence such conditions could not arise as to the time of paying such rent, until appellant had been given notice that further indulgence in such payments would not be granted, or that strict compliance with the lease in that regard would be required. Equity and good conscience required that appellee forego the drastic step of forfeiture, until by prior notice it had afforded appellant a reasonable time to relieve himself from his situation of fancied security. *Majestic Life, etc., Co.* v. *Tuttle, supra,* 109; *Miller* v. *Ready* (1915); 59 Ind. App. 195, 108 N. E. 605; *Palmer* v. *Ford* (1873), 70 Ill. 369; *Carpenter* v. *Wilson* (1904), 100 Md. 13, 59 Atl. 186; *Cogley* v. *Browne, supra; Hukill* v. *Myers, supra; Palmer, etc., Co.* v. *Barney Estate Co., supra; Standard, etc., Co.* v. *Anderson, supra; Montant* v. *Moore, supra.* There is no pretense that appellant was given any such notice since July, 1905, more than nine years prior to the beginning of this action, unless the sending of the monthly statements of the amount due, and subsequent telegrams with reference thereto, can be construed into such notice. It appears from the evidence that such monthly statements were mere formal reminders of the maturity of the rent for the current month. The subsequent telegrams contained matters of solicitation and inquiry only. None of these communications contained any reference to possession or forfeiture, or indicated that the privilege

622    APPELLATE COURT OF INDIANA,

Whitcomb v. Indianapolis Traction, etc., Co.—64 Ind. App. 605.

of payment after maturity was to be withdrawn. After practically all of such communications had been sent, except possibly three of such statements, appellant, on May 25, 1914, served notice on appellee of his election to renew the lease for a second period of ten years in accordance with its terms. There is no evidence that appellee made any objection to such renewal or denial of such right, because of the manner of paying such rent or otherwise, but apparently acquiesced in the exercise thereof in harmony with its previous conduct in regard to the payment of such rent. Under these circumstances, the court is not authorized to draw an inference of notice to appellant of an intention on the part of appellee to deny further indulgence in the matter of paying such rent and to enforce strict performance of the lease in that regard in order to form a basis of forfeiture.

The fact that appellant testified that he did not pay his rent promptly because he was "hard up" and did not have the money, is not inconsistent with his 10. claim that appellee, by its representations and conduct, led him to honestly believe that his lease would not be forfeited and his tenancy terminated because of his delay in payment, and that his failure to pay at maturity was due to a reliance on such belief. Both facts can exist in entire harmony and each be true. The reasonable import of the evidence as a whole on this question is: Appellant believed from the representations and conduct of appellee that his lease would not be forfeited if he failed to pay the rent at maturity, and not having the money at hand, at the time, with which to pay the same, he relied on such representations and conduct, and did not pay the same when due. Such statement therefore does not run counter to appellant's defense of estoppel when considered in its proper connection.

It is contended that the statements made by Mr. McGowan, the president of the company, to appellant with reference to the payment of his rent, and the termination of his tenancy on failure to make such payments at maturity, are not binding on appellee, as he is not shown to have had any authority in that regard. It was admitted on the trial that Mr. McGowan was president of appellee at the time the lease was executed and so remained until his death on December 19, 1911. The by-law introduced in evidence shows that as president he had general management of the affairs of appellee, and of all purchases, contracts and reports, subject to such regulations or orders as the board or executive committee might from time to time adopt. It is not shown that the board or executive committee had adopted any regulations or made any order limiting his authority in making and enforcing contracts. He executed the lease in question on behalf of appellee, and it has, in effect, admitted his authority so to do, by introducing it in evidence, and seeking to assert rights created thereby. He was evidently intrusted with the transaction of such business, and appellee is therefore bound not only by the acts performed by him in pursuance of the authority conferred by such by-law, but also by the acts performed by him within the apparent scope of his authority, as indicated by the business so intrusted to him. Under such circumstances, his authority to bind appellee with reference to the subject-matter of such lease will be presumed in the absence of evidence to the contrary. *Nat. State Bank, etc.* v. *Vigo Nat. Bank* (1895), 141 Ind. 352, 40 N. E. 799, 50 Am. St. 330; *Ellison* v. *Branstrator* (1899), 153 Ind. 146, 54 N. E. 433. We are therefore of the opinion that appellee is bound by such statements so made by Mr. McGowan as its president. But

it has been suggested that appellant, in any event, could not be bound in 1914 by the statements made by its president in 1905.   This suggestion is clearly without merit, as it is evident that if such statements were binding in the beginning they so remained until withdrawn. But, if we should wholly disregard such statements, the evidence as to the conduct of appellee in accepting such rent after maturity for a period of nine years is ample to show an estoppel to assert a forfeiture of such lease without notice.

For the reasons stated, we are of the opinion that the decision of the court is not sustained by sufficient evidence, and error was therefore committed in overruling appellant's motion for a new trial.   Other questions are presented but, in view of the matters determined by this appeal, such questions will probably not reoccur on another trial.   Because of the error indicated, judgment is reversed, with instructions to sustain appellant's motion for a new trial, and for such further proceedings as are not inconsistent with this opinion.

NOTE.—Reported in 116 N. E. 444.   Landlord and tenant: receipt by landlord of rent accruing after breach of condition in lease as waiver of forfeiture for breach, 11 Ann. Cas. 62, Ann. Cas. 1915A 1250, 24 Cyc 1361; covenant for renewal of lease, 123 Am. St. 460, 24 Cyc 991, 1002.